## A. P. Goddard et al. v. Chicago, Milwaukee & St. Paul Ry. Co.

1. STATUTES—*Act of 1899 in Regard to Horse, Dummy or Street Railroads.*—The act of 1899 gave the county board power to consent only to the construction, maintenance and operation of horse, dummy or street railroads or tramways along the public highways, and not to the construction of railways " for passengers, freight, mail and express."

2. SAME—*Conditions upon Which Consent of the City Council or County Board Must be Given Under the Act of 1899.*—By section three of the act of 1899, the consent of the city council or the county board shall not be granted, except upon the condition that the company will pay all damages to owners of property abutting upon the street, alley, road, highway or public ground upon which or over which such road is to be constructed, which they may sustain by reason of the location or construction of the road; the same to be ascertained and paid in the manner provided by law for the exercise of the right of eminent domain.

3. SERVITUDES—*Erection of Poles and Wires for Purposes of Furnishing Light and Heat Imposes upon the Owner of the Fee in a Country Highway, Burdens Not Incident to a Mere Street Railway.*—A grant of authority to construct, erect, place, maintain and operate for twenty years a system of poles and wires, and any and all necessary and convenient appliances, upon any streets, roads or highways of the county, for the conveyance, distribution, and use of electrical current for the purpose of operating the aforesaid railway, and for the purpose of furnishing light, heat and power to the citizens of the county, imposes upon the owner of the fee in a country highway, burdens not incident to a mere street railway for the carriage of passengers living or having business along the street.

**Bill for an Injunction.**—Appeal from the Circuit Court of Stephenson County; the Hon. JAMES S. BAUME, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed December 16, 1902.

OSCAR E. HEARD, attorney for appellants.

CHARLES B. KEELER and N. W. CRONKRITE, attorneys for appellee; GEORGE R. PECK, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

This case is similar to the case of A. P. Goddard et al. against the Chicago & Northwestern Railway Company, *supra.* The bill in this case was by the same complainants, and was for a similar injunction, except that it related to a different railroad company, and to the crossing of another public highway, known as Shawnee street, which the bill averred was just outside the city limits of the city of Freeport, while the answer stated that the west twenty-nine feet of the crossing were within the city and the remaining seventy-one feet were outside the city, and that complainants' railway as proposed will cross defendant's right

of way partly within and partly without the city of Freeport. A similar injunction was issued without notice. Defendant answered. A motion to dissolve was heard and granted. Thereafter the cause was heard upon bill and answer, and the bill was dismissed. This is an appeal by complainants from said decree. All the proceedings in the two cases seem to have been upon the same dates. Substantially all the facts appearing in the case against the Chicago & Northwestern Railway Company appear in this, and for the reasons stated in our opinion in that case, the decree in this case should be affirmed.

But the defendant here, by averments in its answer, and by exhibits thereto, sets up some additional matter which ought to be stated. It sets out in full the ordinance passed by the city council of the city of Freeport under which complainants are operating within the city of Freeport, the petition of complainants to the board of supervisors, and the order or resolution of said board pursuant thereto, upon which complainants rely in filing their bill. These instruments were not set out in full in the record in the other cause. It therefore appears that complainants petitioned the city council for a license " for the construction, maintenance and operation of an electric street railway, and a system of poles and wires for the distribution of electricity for lighting, heating and power;" and that they petitioned the county board for a license ." for the construction, maintenance and operation of a street railway and an electric lighting, heating and power plant in Stephenson county." The ordinance by the city and the orders by the county board are not materially different on the points here involved. Complainants were granted the right to construct, maintain and operate in the streets and highways named a street railway " for passengers, freight, mail and express." The city ordinance required complainants to establish and maintain a freight depot for the receipt and delivery of freight. The act of 1899 only gave the county board power to consent to the construction, maintenance and operation of horse, dummy or street railroads or tram-

ways along the public highways.   In Harvey v. Aurora & Geneva Ry. Co., 174 Ill. 295, the court said:

"There is a wide and well understood difference between a railroad organized for general traffic and a street, horse or dummy railroad, and in placing a construction on the act in question, in order to arrive at the intent of the legislature, the functions, duties and purposes of street or horse and dummy railroads must be kept in mind.  A street railroad, as is well understood, is a road constructed on a street or highway for the purpose of conveying passengers living upon or having business on such street or highway, its main object being to accommodate street travel.   For this purpose the cars make frequent stops to take on and discharge passengers along the street or highway."   See also Board of R. R. Com'rs v. Market St. Ry. Co., 132 Cal. 677; Bloxham v. Consumers' E. L. & St. R. R. Co., 36 Fla. 519, 539; L. & P. R. R. Co. v. Louisville City Ry. Co., 2 Duv. (Ky.) 175.

It is obvious that a railway which is to convey not only passengers, but also freight, mail and express, is a great departure from the street railway described in the Harvey case.   It may well be doubted whether such a railway does not increase the burden resting upon the owner of the fee by virtue of the dedication of his land to the purposes of a country highway.   Again, by section three of the act of 1899, the consent of the city council or the county board shall not be granted, "except upon the condition that the company will pay all damages to owners of property abutting upon the street, alley, road, highway or public ground upon or over which such road is to be constructed, which they may sustain by reason of the location or construction of the road; the same to be ascertained and paid in the manner provided by law for the exercise of the right of eminent domain."   Neither the city council in its ordinance nor the county board in its order or resolution imposed any such condition.   That the operation of a street railroad and the transmission of light, heat and power to citizens are intimately joined in the grant is evident from the language of the order adopted by the county board, which, in section 8 thereof, gives consent and authority to complainants to

construct, erect, place, maintain and operate for twenty years "a system of poles and wires, and any and all necessary and convenient apparatus and appliances upon any streets, roads or highways of the county of Stephenson, with their present and future extensions, for the conveyance, distribution and use of electrical current for the purpose of operating the aforementioned railway, and for the purpose of furnishing light, heat and power to the citizens of Stephenson county." The area in which this right can be exercised within the county is somewhat restricted by other provisions. The portions of said order above quoted give additional force to what is said in our other opinion about the double character of this grant, and that it imposes upon the owner of the fee in a country highway, burdens not incident to a mere street railway for the carriage of passengers living or having business along the street.

The answer in this case further states facts tending to show that the crossing in question will be very dangerous, and alleges that before this suit was begun defendant petitioned the board of railroad and warehouse commissioners of the State of Illinois to fix the place and manner of such crossing of its tracks by complainants; that complainants were notified and appeared before said board and filed a plea or answer denying the jurisdiction of the board; that the board took jurisdiction and had a hearing of the matter, and entered an order permitting complainants to make an overhead crossing over defendant's track, and fixed the details thereof, and forbidding complainants to cross defendant's track on Shawnee street at grade; that said board had jurisdiction to determine said matter and to make said order; and that this bill was filed while said proceeding was pending before said board and with full notice thereof. Complainants argue that their street railway is not within the jurisdiction of said board, and that they are not bound to comply with its order. As what we have already said disposes of this appeal, we deem it unnecessary to determine this further contention. The decree is affirmed.